UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND
ETHICS IN WASHINGTON,

*Plaintiff*,

v.

DEPARTMENT OF HOMELAND
SECURITY,

*Defendant*.

Civil Action No. 23-00046 (AHA)

**Memorandum Opinion**

This Freedom of Information Act ("FOIA") case concerns a request for communications between U.S. Secret Service personnel and a group called the Oath Keepers. In October 2022, Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") asked for "all communications between the Secret Service and any member of the Oath Keepers between August 1, 2020 and Jan 31, 2021." ECF No. 28-2 at 9. The Department of Homeland Security ("DHS"), which the Secret Service is part of, produced several email communications after CREW filed this action. *Id.* at 13; *see* ECF No. 29-2.

Those emails indicate that a Secret Service agent was in contact with Oath Keepers founder Stewart Rhodes about an upcoming rally in September 2020. ECF No. 29-2. The agent wrote, "I am the unofficial liaison to the Oath Keepers (inching towards official)," and described the group as "primarily retired law enforcement/former military members who are very pro-[law enforcement officer] and Pro Trump." *Id.* at 1. Although DHS produced the emails, it redacted the agent's name, invoking FOIA exemptions 6 and 7(C). ECF No. 28-1 ¶ 2.

The sole dispute here is whether FOIA lets DHS redact the agent's name. Both parties have moved for summary judgment on that issue. ECF Nos. 28, 29. The Court grants DHS's motion because it has shown that the records in question were compiled for law enforcement purposes and that redaction of the agent's name protected a substantial privacy interest that is not overcome by any strong public interest in disclosure. The Court denies CREW's cross motion for the same reasons.

I.  **Discussion**

FOIA "mandates that an agency disclose records on request, unless they fall within one of nine exemptions." *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). Those exemptions "must be narrowly construed." *Id.* (internal quotation marks and citation omitted). "The burden is on the agency to justify withholding the requested documents," and a district court must "determine *de novo* whether non-disclosure was permissible." *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 522 (D.C. Cir. 2015). In the FOIA context, "[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (alteration in original) (quoting *Consumer Fed'n of Am. v. Dep't of Agric.*, 455 F.3d 283, 287 (D.C. Cir. 2006)).

Here, DHS withheld the agent's name based on FOIA exemptions 6 and 7(C). Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) encompasses "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).

"Exemption 7(C) is more protective of privacy than Exemption 6" and sets a lower bar for withholding information. *ACLU v. U.S. Dep't of Just.*, 655 F.3d 1, 6 (D.C. Cir. 2011) (quoting *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 496 n.6 (1994)). So if the records at issue were "compiled for law enforcement purposes," triggering exemption 7(C), there is no need to separately consider the applicability of exemption 6. *Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

The Court therefore begins with the question whether the relevant records were compiled for law enforcement purposes. "To show that the disputed documents were compiled for law enforcement purposes," an agency "need only establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citation omitted). "Courts generally afford some deference to agencies 'specializing in law enforcement' that claim their records are eligible for Exemption 7(C) protection." *Bartko v. U.S. Dep't of Just.*, 898 F.3d 51, 64 (D.C. Cir. 2018) (quoting *Ctr. for Nat'l Sec. Studs. v. U.S. Dep't of Just.*, 331 F.3d 918, 926 (D.C. Cir. 2003)).

DHS has satisfied its burden to show that the records in question were compiled for law enforcement purposes. A declaration submitted by DHS attests that the records "were compiled in connection with the Secret Service's protective mission and under its authority to conduct such protective operations." ECF No. 28-2 ¶ 8. Consistent with that characterization, the emails show agency personnel discussing the Oath Keepers' potential presence "for POTUS' upcoming visit" and include a request to "conduct social media analysis on [the Oath Keepers and another group] and provide any information regarding their plans to attend the event." ECF No. 29-2 at 6, 8. The emails also reflect agency personnel's understanding that the Oath Keepers' presence would have

3

"no direct impact on our official site" but would have "an impact on the area where the attendees park and get on buses." *Id.* at 3. The Court accordingly has no trouble concluding that the discussions in these emails were connected to the Secret Service's statutory responsibility to protect the President from security risks. *See* 18 U.S.C. § 3056(a)(1).

CREW suggests that these records were not compiled for law enforcement purposes because they show the unnamed agent helping the Oath Keepers coordinate with the Secret Service instead of investigating the group as a security risk. ECF No. 29-1 at 8. But the emails show agency personnel discussing the Oath Keepers' potential presence at the event and the possible effect on security—discussions that serve the Secret Service's legitimate law enforcement purpose of protecting the President. *See* ECF No. 29-2 at 10 (indicating that agent spoke to representatives from local police department, who advised that Oath Keepers "regularly attended events in the area," that their members and another group often showed up "exercising their 2nd Amendment rights," and that there had been "no significant incidents at any of these events"); *id.* at 6 (stating that "research was negative for POTUS' upcoming visit" regarding "any specific chatter . . . pertaining to the Oath Keepers"). CREW also argues that the emails were not compiled for law enforcement purposes because they discuss guarding political supporters rather than guarding a person subject to Secret Service protection. ECF No. 34 at 4; *see* ECF No. 29-2 at 1 (unnamed agent describing Oath Keepers' "stated purpose" as "to provide protection and medical attention to Trump supporters if they come under attack by leftist groups"). The presence of individuals carrying weapons or otherwise "exercising their 2nd Amendment rights," however, would plainly be relevant to the Secret Service's statutory responsibility to protect the President at a public event, regardless of whether the group was itself focused on the protection of attendees. *Cf.* ECF No. 29-2 at 3 (agent told Rhodes that Oath Keepers "shouldn't be close to the site as it

will be covered by our Zones of Protection and Open Carry becomes null and void"). The records at issue were compiled for law enforcement purposes.

With the first prong of exemption 7(C) satisfied, the Court turns to whether disclosure of the agent's name "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). The Court "must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect." *ACLU*, 655 F.3d at 6 (alteration in original) (quoting *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 776 (1989)). The relevant public interest is "the extent to which disclosure advances the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny, thereby furthering the citizens' right to be informed about what their government is up to." *Id.* (internal quotation marks and citation omitted).

Courts have recognized, and CREW does not dispute, that law enforcement officials "have a legitimate interest in preserving the secrecy of matters," including their identities, "that conceivably could subject them to annoyance or harassment in either their official or private lives." *Lesar v. U.S. Dep't of Just.*, 636 F.2d 472, 487 (D.C. Cir. 1980); *see also, e.g.*, *Ball v. U.S. Marshals Serv.*, No. 19-cv-1230, 2021 WL 4860590, at *6 (D.D.C. Oct. 19, 2021) ("Courts have repeatedly found that it is proper to withhold names and other identifying information about law-enforcement officers and government officials under Exemption 7(C)."); *Horvath v. U.S. Secret Serv.*, 419 F. Supp. 3d 40, 47 n.2 (D.D.C. 2019) (explaining that Secret Service personnel referred to in documents "have a substantial privacy interest in withholding their personally identifiable information" because "publication of their identities could lead to interruption in their official duties, and seriously prejudice their effectiveness in carrying out their protective and criminal

5

investigative responsibilities" (citation omitted)); *Dalal v. U.S. Dep't of Just.*, 643 F. Supp. 3d 33, 69–70 (D.D.C. 2022) (collecting cases).

That is true here as well. DHS's declaration asserts that the agent's name was withheld "to avoid foreseeable harm and subjecting a public servant, or those associated with or to the individual, to unwanted contact by adversaries or media, retaliation, harassment, and annoyance either in the conduct of the agent's official duties or personal/private life." ECF No. 28-2 ¶ 13. The agent in question "was responsible for conducting protective intelligence operations related to the security of Secret Service protectees." *Id.* ¶ 15. And "[p]ublicity, adverse or otherwise, arising from a particular protective operation may seriously jeopardize the effectiveness in conducting other protective functions or performing [agents'] day-to-day tasks." *Id.* ¶ 16. These assertions are sufficient to support a substantial privacy interest.

To be sure, as CREW argues, a declaration that speaks only in generalities and fails to identify any specific harm is insufficient. ECF No. 29-1 at 8–10. In *Human Rights Defense Center v. United States Park Police*, 126 F.4th 708 (D.C. Cir. 2025), the agency's declaration stated without elaboration that releasing the names of police officers "would constitute an unwarranted invasion of personal privacy." *Id.* at 716 (citation omitted). The court concluded that the agency's privacy assertions were "wholly conclusory, lacking even minimal substantiation of the officers' privacy interest or the potential harm from disclosing their names." *Id.* at 715. Other courts have likewise ordered disclosure where the agency offered "bare conclusory assessments" of the privacy interest at stake. *See Stonehill v. IRS*, 534 F. Supp. 2d 1, 12 (D.D.C. 2008); *see also United Am. Fin., Inc. v. Potter*, 667 F. Supp. 2d 49, 60 (D.D.C. 2009) (holding that declarations' statements were "far too conclusory to support a finding that these employees have a privacy interest"). But here, DHS's declaration goes beyond conclusory assertions and explains the consequences that

6

could conceivably result from disclosure of the agent's identity, thereby demonstrating the requisite privacy interest. *See* ECF No. 28-2 ¶¶ 13–16.[1]

At the same time, CREW has not identified a strong public interest in disclosure. CREW argues that the agent in question acted negligently or improperly and the public therefore has a substantial interest in knowing who the agent is. ECF No. 29-1 at 10–11; ECF No. 34 at 10–11. In cases "where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004). Instead, "the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Id.* CREW has not made that showing here.

According to CREW, the emails show misconduct because the agent was "communicating with, coordinating with, and expressing sympathy toward a violent militia group and their leader in advance of their unprecedented assault on the Capitol on January 6, 2021." ECF No. 29-1 at 10–11. But the Court cannot infer that the agent acted improperly by describing the Oath Keepers as pro–law enforcement and forwarding their leader's cell phone number to other agency personnel. *See* ECF No. 29-2 at 1. To the contrary, the emails indicate that the agency did investigate the Oath Keepers before the event. *See id.* at 8 (noting that agency personnel discussed Oath Keepers with

---

[1]   CREW suggests for the first time in its reply brief that DHS's redactions violate the FOIA Improvement Act, which allows an agency to withhold information only if it "reasonably foresees that disclosure would harm an interest protected by an exemption." 5 U.S.C. § 552(a)(8)(A)(i)(I); *see* ECF No. 34 at 7–8. That analysis "is much the same" as the Court's discussion above of how DHS has demonstrated a substantial privacy interest. *See Hum. Rts. Def. Ctr.*, 126 F.4th at 716. The assertions in DHS's declaration establish "a foreseeable harm sufficient to justify withholding the officer names at issue." *See id.* at 717.

local police department and requesting "social media analysis" and "any information regarding their plans to attend the event"); *id.* at 6 (referencing searches for Oath Keepers news articles and social media profiles and stating that research on "any specific chatter" related to Oath Keepers "was negative for POTUS' upcoming visit").

CREW also contends that disclosure is in the public interest because it would shed light on how the Secret Service responds to "unofficial contact and positive sentiment toward extremist militia groups." ECF No. 34 at 11. But disclosing the name of the agent would not provide any additional insight into how the Secret Service is carrying out its statutory functions. *See McGehee v. U.S. Dep't of Just.*, 800 F. Supp. 2d 220, 234 (D.D.C. 2011) (finding that agency properly withheld names of agents under exemption 7(C) where plaintiffs "failed to convincingly explain how knowing the names of the persons involved" would shed light on agency's performance of statutory duties); *see also McCutchen v. U.S. Dep't of Health & Hum. Servs.*, 30 F.3d 183, 188 (D.C. Cir. 1994) ("A mere desire to review how an agency is doing its job, coupled with allegations that it is not, does not create a public interest sufficient to override the privacy interests protected by Exemption 7(C)."); *Horvath*, 419 F. Supp. 3d at 48 (finding insufficient showing of public interest in disclosure where "nothing in the record suggests that the Secret Service mishandled the investigation").[2]

---

[2]    CREW also argues there is a public interest in investigating possible violations of the Federal Records Act and other statutes concerning government records. ECF No. 29-1 at 12–13. CREW relies on a statement in one email that Rhodes "often contact[s]" the unnamed agent to speculate that there may be more responsive emails. *Id.* at 12 (quoting ECF No. 29-2 at 8). But CREW does not challenge the sufficiency of DHS's search, and any communications prior to August 2020 (one month before that email was sent) would have fallen outside the scope of CREW's request. *See* ECF No. 28-2 at 9.

CREW has not identified any strong public interest in disclosure that outweighs the substantial privacy interest at stake, and the redactions were therefore proper under exemption 7(C).[3]

## II. Conclusion

For these reasons, DHS's motion for summary judgment is granted, and CREW's cross motion for summary judgment is denied.

A separate order accompanies this memorandum opinion.

 

_____

AMIR H. ALI
United States District Judge

Date:  May 5, 2025

---

[3] Although CREW does not raise the issue, a district court "cannot approve withholding exempt documents without making an express finding on segregability." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (internal quotation marks and citation omitted). An agency is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material." *Hodge v. FBI*, 703 F.3d 575, 582 (D.C. Cir. 2013) (alteration in original) (citation omitted). In light of DHS's declaration attesting that it conducted a line-by-line review of the records and that "no further information can be segregated without jeopardizing the statutorily protected information," the Court concludes that DHS has satisfied its segregability obligation. ECF No. 28-2 ¶ 19; *see, e.g.*, *Horvath*, 419 F. Supp. 3d at 51 (finding segregability obligation satisfied where Secret Service declaration attested to line-by-line review).